UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMANUEL PITTMAN, JR.,

    Plaintiff,

v.                                      Case No: 8:17-cv-3125-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Emanuel Pittman, Jr., seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff protectively filed applications for a period of disability, DIB, and SSI on July 17, 2014, alleging disability beginning on May 1, 2013. (Tr. 196-205). Plaintiff's applications were denied initially on October 2, 2014, and upon reconsideration on November 5, 2015. (Tr. 123-25, 127-29, 134-38, 140-44). Plaintiff requested a hearing and on May 19, 2016, a hearing was held before Administrative Law Judge ("ALJ") Julia Gibbs. (Tr. 53-72). On January 10, 2017, the ALJ entered a decision finding Plaintiff not disabled. (Tr. 37-47). Plaintiff requested review of the hearing decision which the Appeals Council denied Plaintiff's request on October 27, 2017. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on December 29, 2017. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2013, the alleged onset date. (Tr. 39). At step two, the ALJ found that Plaintiff had the following severe impairments: gout with gouty arthropathy and osteoarthritis of the left ankle. (Tr. 39). At step three, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 40).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Such work does not require more than frequent use of the hands for fingering or grasping. Such work can be done sitting or standing, and thus allows the worker to alternate between those positions without stopping work or leaving a work site.

(Tr. 40). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a cook. (Tr. 45).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 45). Specifically, the ALJ found that Plaintiff could perform such occupations as assembler and inspector. (Tr. 46). Further, the ALJ found that even if Plaintiff was limited to only occasionally reaching, handling, and fingering, there existed a significant number of jobs Plaintiff could perform, specifically the jobs usher and counter clerk. (Tr. 46). The ALJ concluded that Plaintiff had not been under a disability from May 1, 2013, the alleged onset date, through January 10, 2017, the date of the decision. (Tr. 47).

## II. Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to establish that Plaintiff can perform other work in sufficient numbers in the national economy; (2) whether the ALJ erred by failing to properly assess the findings and medical opinions of consultative examiner, Dr. Shefsky; (3) whether the ALJ erred by failing to inquire on the record as to whether there were

any inconsistencies between the VE's testimony and the DOT; and (4) whether the ALJ erred by improperly assessing Plaintiff's credibility and RFC. The Court will address each issue in turn.

**(a) Whether the ALJ erred by failing to establish that Plaintiff can perform other work in sufficient numbers in the national economy.**

At the administrative hearing, the ALJ posed a hypothetical question to the vocational expert ("VE") describing an individual capable of light work that can be done either standing or sitting but would allow the worker to alternate between the two positions without having to leave the work site and that would require no more than frequent reaching and handling. (Tr. 69). The VE responded with two job titles: assembler, DOT #706.687-010 with 100,000 jobs available nationally, and inspector, DOT #559.687-074 with 40,000 jobs available nationally. The VE further provided that he would reduce the incidents of these occupations by 75%. (Tr. 69). At step five in her decision, the ALJ noted the VE's testimony concerning job incident data with respect to the occupations assembler (100,000 jobs) and inspector (40,000 jobs), but failed to note that the jobs incident data was to be reduced by 75%. (Tr. 46).

Plaintiff argues that the ALJ failed to carry her burden at step five of proving that there are other jobs in the national economy that Plaintiff can work because the ALJ failed to note that the VE's job incident data was to be reduced by 75%. (Doc. 22 p. 18-20). The Court rejects this argument. While Plaintiff is correct that the ALJ failed to correctly note that the VE's job numbers were to be reduced by 75%, the ALJ's failure is harmless error as the reduced job numbers (i.e., 25,000 assembler jobs and 10,000 inspector jobs) still constitute a significant number in the national economy. *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished) (finding that 840 jobs constituted a significant number in the national economy to support an ALJ's step five determination).

**(b) Whether the ALJ erred by failing to properly assess the findings and medical opinions of consultative examiner, Dr. Shefsky.**

Plaintiff argues that the ALJ erred by failing to state the weight accorded to the consultative examination report completed by Robert Shefsky, M.D., which indicated that Plaintiff could not squat, had difficulty sitting on and standing up from an exam table, and had impaired vision. (Doc. 22 p. 22-23). Defendant contends that the ALJ properly evaluated the medical evidence from Dr. Shefsky. (Doc. 22 p. 24-26).

The record shows that Plaintiff was seen by Dr. Shefsky for a consultative examination on behalf of the SSA on September 29, 2014. (Tr. 514-20). Dr. Shefsky noted that Plaintiff reported pain that was an 8 on a scale of 10 in his right hand, right ankle and right knee. (Tr. 514). The pain was aggravated by walking and helped with medications. (Tr. 514). Plaintiff's current medications were Hydrocodone 5/500 every 6 hours, Allopurnol 300 mg per day, Atenolol 50 mg per day, ibuprofen 200mg every 5 hours, prednisone 10 mg per day, and iron medication. (Tr. 514). Plaintiff would drink a few beers now and then, but did no street drugs. (Tr. 514). Plaintiff's primary care physician was Dr. Moukaddem. (Tr. 515). Plaintiff did not cook or clean. (Tr. 514). He could shower and dress himself without assistance. (Tr. 514). Plaintiff's vision was 20/200 in the right, 20/70 in the left and 20/70 with both. (Tr. 515). Dr. Shefsky noted that Plaintiff appeared to be in mild distress due to pain, that his gait was moderately antalgic on the right, that he could not walk on his heels and toes, and that he could not do a squat. (Tr. 515). Dr. Shefsky noted that Plaintiff had a normal stance and walked without an assistive device. (Tr. 515). Plaintiff had full range of motion for his cervical and lumbar spine, and his left shoulders, elbows, forearms, wrists knee and ankle, as well as both hips. (Tr. 516, 518-519). He had 50% of normal range of motion in his right wrist and right knee. (Tr. 519). Plaintiff had full strength in both extremities. (Tr. 516). There was tenderness over the right wrist, ankle and knee. (Tr. 516). There was swelling of the

joints of the right hand, especially the DIP of the middle finger. (Tr. 516). Hand dexterity was not intact on the right. (Tr. 516). Grip strength was 4/5 on the right. (Tr. 516). Plaintiff had difficulty buttoning and tying, though he could zip. (Tr. 516). Mental status exam showed a flat affect but no other abnormal mental exam results. (Tr. 516). Dr. Shefsky diagnosed gout by history with right wrist, right ankle and right knee pain at that time; chemical burn to right eye by history; elevated blood pressure by history; and hemorrhoids by history. (Tr. 517). He indicated Plaintiff's prognosis was "stable." (Tr. 517).

In her decision, the ALJ addressed Dr. Shefsky's consultative examination findings as follows:

> In a September 2014 State agency consultative examination report, Robert Shefsky, MD, noted that the claimant appeared to be in mild distress due to pain, but the claimant reported pain at a level of 8/10. (Exhibit 4F/1-2). His gait was moderately antalgic on the right. He could not walk on his heels and toes. He could not squat. He appeared to have a normal stance, and did not use an assistive device. He needed help to get on and off the examination table. (Exhibit 4F/2). Dr. Shefsky noted that the claimant had limited range of motion in his right wrist and right knee. (Exhibit 4F/3). He had full strength in all extremities. (Exhibit 4F/3). Dr. Shefsky provided diagnoses of gout, by history, with right wrist, right ankle, and right knee pain at the time of the examination; chemical burn to right eye, by history and elevated blood pressure, by history. (Exhibit 4F/4). The undersigned gives great weight to his opinion that the claimant's prognosis was stable, as it is consistent with his examination results and the claimant's treatment records for the period under consideration. (Exhibit 4F/4).

(Tr. 42).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social*

*Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, the Court finds no error in the ALJ's treatment of the consultative examination performed by Dr. Shefsky. In her decision, the ALJ specifically addressed the consultative examination findings, discussed them at length, and specifically weighed the overall prognosis opinion offered by Dr. Shefsky. The Court rejects Plaintiff's argument that the ALJ was required to specifically weigh Dr. Shefsky's findings concerning Plaintiff's ability to squat and the ability to get on and off an examination table. These observations were not expressions of Dr. Shefksy's concerning the severity of Plaintiff's impairments, but were his observations of Plaintiff during a single examination. Plaintiff cites to no authority showing that an ALJ must individually weigh each observation finding by a physician during a physical examination.

Furthermore, the Court rejects Plaintiff's argument that the ALJ erred by failing to properly evaluate Dr. Shefsky's findings concerning Plaintiff's visual impairment. In her decision, the ALJ expressly discussed and rejected the visual limitations Dr. Shefsky reported, 20/70 overall vision, because Plaintiff's medical records for the period under consideration do not contain sufficient medical evidence to show that he has a vision impairment that persisted, or was expected to persist, at a severe level for a continuous 12-month period (Tr. 44, 515). Also, the ALJ noted that Dr. Shefsky's examination noted that Plaintiff took his vision examination without correction. Later in the decision, the ALJ cited to a nurse practitioner's April 2016 referral of Plaintiff to an ophthalmologist, but noted the absence of a detailed ophthalmology report in the

record. (Tr. 44, 563). In addition, the ALJ cited a May 2016 primary care treatment report notes that the claimant denied blurred vision or diminished visual acuity (Tr. 44, 554).

The ALJ thoroughly reviewed and considered the consultative examination findings of Dr. Shefsky and weighed his opinion. The Court will not disturb the ALJ's treatment of Dr. Shefsky's opinion on review.

### (c) whether the ALJ erred by failing to inquire on the record as to whether there were any inconsistencies between the VE's testimony and the DOT.

Plaintiff argues that the ALJ erred by failing to inquire on the record as to whether there are nay inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 22 p. 27-28). Plaintiff contends that the VE's testimony that Plaintiff could perform the jobs assembler and inspector conflicts with the DOT, as the DOT defines these jobs as "light duty" and there is nothing in the DOT definition of "light duty" that allows for alternating between sitting and standing. (Doc. 22 p. 27-28). In response, Defendant argues that Plaintiff has failed to show any inconsistencies between the VE's testimony and the DOT. (Doc. 22 p. 28-29).

The DOT specifies that assembler and inspector are "light duty" jobs. The DOT defines "light duty" as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*Dictionary Of Occupational Titles; Appendix C: Components of the Definition Trailer; IV. PHYSICAL DEMANDS - STRENGTH RATING (Strength).*

In the Eleventh Circuit, courts have interpreted Social Security Ruling ("SSR") 00-4p to require an ALJ to elicit a "reasonable explanation" for an apparent conflict between a VE's testimony and the *DOT*. *Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1339 (M.D. Fla. 2007). SSR 00-4p provides that

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. The Court notes that "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted]. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference . . ." *Klawinski v. Commissioner of Social Security*, 391 Fed. App'x 772, 775 (11th Cir. 2010).

The transcript of the administrative hearing reveals that the ALJ never asked the VE whether his testimony was consistent with the DOT. Plaintiff, however, has failed to show that the ALJ's failure to do so warrants remand in this case. During the hearing, Plaintiff's counsel did not challenge the VE's testimony and a review of the hearing reveals no "apparent unresolved conflict" between the testimony and the DOT. Further, even now, Plaintiff has failed to show that

a conflict exists. Contrary to Plaintiff's claim, there is nothing in the definition of "light duty" that precludes a sit/stand option. Because the DOT is silent as to the availability of a sit/stand option, it was proper for the ALJ to obtain and Consider VE testimony in order to supplement the DOT descriptions. *Razor v. Comm'r of Soc. Sec.*, 2013 WL 5854575, at *6 (M.D. Fla. Oct. 30, 2013). The Court will not disturb the ALJ's reliance on the VE testimony on appeal.

### (d) Whether the ALJ erred by improperly assessing Plaintiff's credibility and RFC.

Plaintiff argues that the ALJ's RFC finding and credibility assessment are not supported by substantial evidence. (Doc. 22 p. 29-34). Plaintiff argues that the medical record shows that Plaintiff consistently had severe pain, recurrent swelling, and a need for extensive medication to treat his symptoms. (Doc. 22 p. 30). In response, Defendant argues that substantial evidence supports the ALJ's decision. (Doc. 22 p. 34-36).

The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

Here, the Court rejects Plaintiff's argument that the ALJ's RFC and credibility finding are not supported by substantial evidence. In his decision, the ALJ thoroughly reviewed the medical evidence of record, weighed the medical opinions, and explained his reasoning in formulating the RFC finding. In conducting review, the Court is cognizant that it shall not reweigh the evidence or substitute its judgment for that of the ALJ. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir.

2002). In essence, Plaintiff's argument is that the ALJ incorrectly weighed the evidence and that the Court should remand for the ALJ to reconsider his decision. The Court defers from reweighing the evidence upon review and affirms the ALJ's decision.

### III.     Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties